Citation Nr: 1522714 
Decision Date: 05/29/15 Archive Date: 06/11/15

DOCKET NO. 13-00 170A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to service connection for hypertension.

2. Entitlement to service connection for internal hemorrhoids.

3. Entitlement to service connection for chronic pancreatitis.

4. Entitlement to service connection for diabetes mellitus. 

5. Entitlement to service connection for headache disability.

6. Whether new and material evidence has been received to reopen the previously denied service connection claim for a right knee disability. 

7. Whether new and material evidence has been received to reopen the previously denied service connection claim for a left knee disability. 



REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

The Veteran 


ATTORNEY FOR THE BOARD

C. Fields, Counsel


INTRODUCTION

The Veteran had active service from February 1979 to August 1992.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from December 2010 and April 2011 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee. 

The Veteran testified before at a Board hearing via videoconference in March 2015; a hearing transcript is of record. The claims file is entirely electronic.

In April 2010, the Veteran sought to "reopen" the previously denied claims for service connection for the knees and a back disability due to clear and unmistakeable error (CUE) in the original denial of those claims in March 2006. He alleged that the RO had failed to consider evidence of the claimed disabilities that was in his service treatment records.

 In March 2011, the St. Petersburg, Florida RO notified the Veteran that the "claim" for CUE would not be processed, and no further action would be taken at that time, because the April 2010 submission did not meet the criteria for a "claim" of CUE. The letter included the criteria for what would be considered a "valid claim for review based on CUE." The Veteran was not provided with notice of his appellate rights regarding the RO's decision not to adjudicate his CUE allegations. Hence, his allegations of CUE remain pending. This matter is referred to the RO for appropriate action (except for the allegation of CUE in the denial of service connection for right and left knee disabilities, which is considered in the REMAND section of this decision).

Service connection for a back disability was subsequently granted based on a reopened claim, but the claim to reopen for knee disabilities remains on appeal.

The issues of entitlement to service connection for hypertension, hemorrhoids, diabetes, headaches, and bilateral knee disabilities (including the question of whether new and material evidence has been received) are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

In March 2015, prior to the promulgation of a decision in the appeal, the Veteran requested a withdrawal of the appeal with regard to the issue of service connection for pancreatitis in writing and on the record at the Board hearing.


CONCLUSION OF LAW

The criteria for withdrawal of an appeal by the appellant have been met for the issue of entitlement to service connection for chronic pancreatitis. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2014); 38 C.F.R. § 20.204 (2014).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Dismissal

The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C.A. § 7105. The Veteran clearly indicated on the record at the March 2015 hearing, as well as in writing in March 2015, that he wished to withdraw the appeal as to the issue of service connection for chronic pancreatitis. See 38 C.F.R. § 20.204. As such, there remain no allegations of errors of fact or law for appellate consideration; the Board does not have jurisdiction to review the appeal with respect to this issue and it is dismissed.


ORDER

The appeal of the issue of service connection for chronic pancreatitis is dismissed.


REMAND

As noted above, the Veteran's motion alleging CUE in the 2006 denial of service connection for knee disabilities remains pending. This issue is inextricably intertwined with that of service connection and whether new and material evidence is needed to reopen the claims.

There is an indication of outstanding VA treatment records that may be pertinent to all of the claims on appeal, and VA has a duty to attempt to obtain them. The March 2011 VA examiner noted that the Veteran's hypertension was first diagnosed at VA in 2008 and that his blood pressure reading were stable since that time; however, a diagnosis of hypertension in 2008 is not in the claims file. A July 2008 VA treatment record recorded various current problems, but not hypertension. 

The July 2008 VA treatment record also noted that a colonoscopy in July 2007 showed internal hemorrhoids, but those records are not in the claims file. 

Further, a December 2004 VA treatment record noted elevated triglycerides and related treatment in April 1997, but those records are not in the claims file. 

The Veteran testified that he was first diagnosed with diabetes in 2004, or that he was diagnosed shortly after service but was treated with diet and exercise initially. Records of the initial diagnosis are not in the file. He denied a history of diabetes mellitus in the December 2004 VA treatment record, and the assessment included a family history of diabetes mellitus but no current diagnosis of diabetes mellitus. 

Additionally, the Veteran reported being first treated with medication for hypertension when he sought treatment at the Haley VA Medical Center (VAMC) in St. Petersburg, Florida, for a hernia procedure in about 1996. There are records of treatment in March 1997 at the Tampa VA facility for the lumbar spine, pain radiating to the left leg, anxiety, and rule out hypertension, but no records from 1996 or 1997 pertaining to a hernia or any follow-up or diagnosis for hypertension. 

The Veteran testified that all of his treatment since service has been at VA facilities. He has identified treatment at various times in Charlotte County, Fort Meyers, St. Petersburg, and Bay Pines, Florida; and in Clarksville and Nashville, Tennessee. See, e.g., statements in April 2010, May 2010, January 2013, March 2015 hearing. 

The Veteran also alluded to a possible relationship between his service-connected right ankle and lumbar spine and his knees at the March 2015 hearing. He should be provided notice as to establishing service connection on a secondary notice.

The Veteran failed to appear for scheduled VA examinations in March 2010; however, he had requested to reschedule due to being out of town for an emergency. VA examinations were completed in March 2011 for hypertension and the knees, but an examination was not requested or provided for hemorrhoids, headaches, or diabetes mellitus. These should be provided upon remand, as there is an indication that a current disability may be related to service, may have manifested within a presumptive time period, or may be related to service-connected disability. 

The March 2011 VA examiner's opinions for the knees and hypertension do not appear to have addressed all pertinent facts, and additional pertinent records may be obtained upon remand. Secondary service connection should also be addressed.

The Veteran argues that his current diabetes is related to elevated triglycerides in service, and he submitted a medical article discussing a possible relationship between high triglycerides or high cholesterol and Type 2 diabetes. There are notations in the Veteran's service records in July 1992 and August 1992, including in his retirement examination that his elevated triglycerides may have been due to heavy use of alcohol. The Veteran testified in 2015 that he was drinking heavily around the time of his service discharge and for several years thereafter. His reports in VA treatment records reflect also that he drank heavily until 2003 and again as of at least December 2012. See VA records in March 1997; May 2010; December 2012. Direct service connection may not be granted where a disability is a result of the Veteran's own willful misconduct or his abuse of alcohol (meaning the use of alcohol beverages over time) because the disability is not considered to have been incurred or aggravated in line of duty. See 38 U.S.C.A. § 105(a); 38 C.F.R. §§ 3.1(m), 3.301(a), (c)(2), (d). The examiner should address this upon remand.

The Veteran's August 1992 service retirement examination also noted that he was a smoker, and he reported in a December 2004 VA treatment session that he had smoked two packs per day for 7-8 years until quitting in approximately 2000. His smoking history was also noted in subsequent VA treatment records in connection with hypertension and other conditions. Service connection is prohibited for a disability that results from the Veteran's use of tobacco products in service. 38 C.F.R. § 3.300(a). Service connection is not prohibited, however, if the disability resulted from a disease that can be service-connected on some basis other than the use of tobacco products during service, or if the disability became manifest during service, or to the required degree of disability within any applicable presumptive period. 38 C.F.R. § 3.300 (b)(1). This should be addressed as well.

There is an indication of a possible preexisting headache disability; however, it was not noted as a disability, as opposed to history of symptoms, on the Veteran's service enlistment examination. See 38 C.F.R. § 3.304(b). Specifically, in his January 1979 enlistment examination, the Veteran checked "don't know" for a history of frequent or severe headaches. The clinical examination did not record any abnormalities, defects or diagnoses but, rather, noted that the Veteran had headaches until 15 years of age and that they were "now gone." Therefore, a disability was not noted at that time, and he is considered to have been sound upon entry into service. Id. The burden is on VA to rebut the presumption of soundness by clear and unmistakeable evidence both that a disability preexisted service and was not aggravated by service; if the presumption is not rebutted, the claim is treated as one for service connection incurrence. See Horn v. Shinseki, 25 Vet. App. 231, 234 (2012); Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004).

Service treatment records include pre-service treatment records in 1974 and 1976 reflecting that the Veteran had recurring headaches for several years until age 15. In 1976, the diagnosis was migraine headaches and possible seizure disorder; the Veteran was prescribed Dilantin and Cafergot and advised to follow-up in one month. There is also a statement from the Veteran's mother in January 1979 that he had not had any recurring headaches since the testing in 1976, and that the doctors told her at that time that he would probably grow out of the condition. 

Similarly, the Veteran testified at the 2015 hearing that he had headaches as teenager, but they had disappeared prior to his entry into service. He indicated that he began to have recurring headaches again after a 1988 injury when he ran into a pole and lost consciousness briefly, for which he sought treatment, and that they have continued since that time. The Veteran has also reported injuries related to parachuting in the early 1980s and in 1986, when he hit his head and blacked out briefly, respectively. He was treated for a head injury after running into a pole in October 1988, and for headaches in October 1990, December 1990, March 1992, which were diagnosed or described as migraine headaches, viral syndrome, sinus or tension headaches, or possible posttraumatic headaches, respectively. In October 1990, the Veteran reported a history of migraines until age 13 and that he "gets them once a year," and the assessment was again migraine headaches. In a Report of Medical History for his August 1992 retirement examination, the Veteran reported frequent or severe headaches; ear, nose, or throat trouble; and head injury; however, no pertinent clinical abnormalities were noted on the clinical examination.

The Veteran is also service-connected for allergic rhinitis; therefore, the VA examiner should clarify whether there is a separate headache disability currently. The standards for aggravation of a preexisting disability should also be addressed.

Accordingly, the case is REMANDED for the following action:

1. Provide the Veteran with full notice of how to substantiate a claim for secondary service connection.

2. Adjudicate the allegations of CUE in the 2006 rating decision that denied service connection for bilateral knee disabilities. The Board will not further consider this issue unless the Veteran perfects an appeal by submitting a substantive appeal after issuance of a statement of the case following a timely notice of disagreement.

3. Obtain all VA treatment records, including the results of any diagnostic tests or studies, for the Veteran since August 1992 for facilities in Charlotte County, Fort Meyers, St. Petersburg, and Bay Pines, Florida; and in Clarksville and Nashville, Tennessee. 

Requests for VA records must continue until they are obtained, or until it is reasonably certain that such records do not exist, or further efforts to obtain the records would be futile. If any of the identified records are not available, notify the Veteran of the attempts made and any further efforts that VA will make, and allow him an opportunity to provide the missing records.

3. Thereafter, schedule the Veteran for VA examination(s) to determine whether current hypertension, hemorrhoids, diabetes, headaches, and bilateral knee disabilities are related to service. 

The examiner(s) should conduct any necessary studies or testing, and respond to the following based on such examination and review of the entire claims file:

NOTE: The examiner must provide reasons for any opinions.

If the examiner rejects pertinent lay reports, a reason must be provided. Lay statements cannot be rejected due solely to a lack of medical documentation, although this may be considered with other evidence. 

If a requested opinion cannot be provided without resort to speculation, the examiner should explain why a non-speculative opinion cannot be offered.

(a) Did the Veteran's hypertension at least as likely not (50 percent probability or more) have its onset during service, or was it otherwise incurred as a result of service, other than due to tobacco use in service? 

The examiner should note diastolic readings of 90 or higher on occasion during service.

Did the Veteran have diastolic pressure of predominantly 100 or more; or systolic pressure of predominantly 160 or more; or a history of diastolic pressure of predominantly 100 or more that requires continuous medication for control within one year of his discharge from service?

The examiner should discuss the significance of the following: 
- the notation in a retention examination of "hypertension (will be eval[uated] by TMC)";
- the blood pressure reading of 140/96 at the August 1992 service retirement examination and other readings of 90 mm or higher during service; 
- the Veteran's 2015 testimony that he was told when evaluated at the TMC that he could have started blood pressure medicine, but it was not recommended at that time due to his young age.

(b) Did any current chronic hemorrhoid disability (meaning since the Veteran's 2010 claim) at least as likely not (50 percent probability or more) have its onset during service, or was it otherwise incurred as a result of service?

(c) Did the Veteran's current diabetes at least as likely not (50 percent probability or more) have its onset during service, or was it otherwise incurred as a result of service, to include from untreated elevated triglycerides in service? 

Also, did diabetes at least as likely as not manifest within one year after the Veteran's service discharge (or by August 1993)? 

The examiner should discuss the significance of the following, along with other pertinent evidence: 
- medical articles discussing the possible relationship between high triglycerides or high cholesterol and Type 2 diabetes;
- a December 2010 VA clinical pharmacist record discussing lipid management and history, noting that genetic dyslipidemia is very likely, although the Veteran denied alcohol use at that time;
- the Veteran's 2015 testimony that VA Pharmcare providers told him that his elevated triglycerides caused his diabetes, and that they were related to his drinking , but that he did not drink for nine years and the triglycerides did not improve.

(d) With regard to headaches:

(i) Does the Veteran at least as likely as not (50 percent probability or more) have a current chronic headache disability (meaning since his 2010 claim), to include migraines, as separate and distinct from symptoms of allergic rhinitis?

(ii) If so, did the Veteran's headache disability clear and unmistakably exist at the time of his entry into service in February 1979? In other words, did any prior migraine headache disorder still exist at the time of service entry, even if it was asymptomatic at that time?

(iii) If the headache disability did clearly and unmistakably preexist service, was the condition clear and unmistakably not aggravated (meaning permanently worsened beyond its natural progression) by injury or disease in service, to include head injuries? 

The examiner is advised that there must be more than temporary flare-ups or recurrence of pre-service symptoms to establish aggravation. Rather, there must be a permanent worsening of the underlying disability during service.

(iv) If your response to either of the above is negative, was the current headache disability at least as likely as not incurred during the Veteran's service, or did it manifest to a compensable degree within one year after service discharge (or by August 1993)?

(e) Identify all currently diagnosed left or right knee disabilities, and indicate whether there is arthritis shown by x-rays. For each current disability:

(i) Did any current left or right knee disability at least as likely as not (50 percent probability or more) have its onset during service, or was it otherwise incurred as a result of service, to include from the impacts of parachuting? 

Or, did any current arthritis of the left or right knee at least as likely as not first manifest to a compensable degree (including as due to arthritis with painful motion) within one year after active duty (by August 1993)? 

(ii) For secondary service connection:

Was any currently diagnosed left or right knee disability at least as likely as not proximately caused by the Veteran's service-connected right ankle or low back disabilities? 

Also, if there was no causation, was the currently diagnosed left or right knee disability at least as likely as not proximately aggravated (worsened beyond its natural progression) by the right ankle or low back? 

If aggravation is found, identify the baseline level of disability prior to any such aggravation, to the extent possible, based on available evidence.

(iii) The examiner should discuss the significance of the following, along with other pertinent lay and medical evidence: 
- the medical articles regarding the possible effects of parachuting impacts on the knees;
- the Veteran's 2015 testimony that his VA orthopedist in Florida told him that his knee arthritis was due to repetitive use.

4. Then, if any benefit sought on appeal remains denied, provide a Supplemental Statement of the Case before returning the case to the Board, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). All claims remanded for additional development or other appropriate action must be handled expeditiously. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


______________________________________________
Mark D. Hindin
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs