Citation Nr: 1527830 
Decision Date: 06/29/15 Archive Date: 07/09/15

DOCKET NO. 11-21 424 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.

2. Entitlement to service connection for bilateral tinnitus.


REPRESENTATION

Appellant represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

A. Solomon, Associate Counsel
INTRODUCTION

The Veteran served on active duty from June 1968 to April 1972.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas, which denied the Veteran's claims for entitlement to service connection for bilateral hearing loss and tinnitus. 

A hearing was held on November 6, 2013, by means of video conferencing equipment with the appellant in San Antonio, Texas, before Kathleen K. Gallagher, a Veterans Law Judge, sitting in Washington, DC, who was designated by the Chairman to conduct the hearing pursuant to 38 U.S.C.A. § 7107(c), (e)(2) and who is rendering the determination in this case. A transcript of the hearing testimony is in the claims file. 

The Board subsequently remanded the case for further development in April 2014 and November 2014. That development was completed, and the case was returned to the Board for appellate review.

The issue of entitlement to service connection for bilateral hearing loss is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The Veteran currently has bilateral tinnitus that arose during active service.



CONCLUSION OF LAW

The criteria for service connection for bilateral tinnitus have been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). Without deciding whether the notice and development required has been satisfied with respect to the issue adjudicated herein, the Board concludes that this duty does not preclude the Board from adjudicating the appeal of the claim for service connection for tinnitus, because the Board is granting in full the benefits sought on appeal. If any error was committed with respect to the duty to notify or the duty to assist, such error was harmless and need not be further considered.

II. Service Connection

Service connection may be established for disability resulting from personal injury suffered or disease contracted in the line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service. 38 U.S.C.A. § 1110, 1131 (West 2014); 38 C.F.R. §§ 3.303, 3.304 (2014). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

To establish service connection for a disability resulting from a disease or injury incurred in service, or to establish service connection based on aggravation in service of a disease or injury which pre-existed service, there must be (1) competent evidence of the current existence of the disability for which service connection is being claimed; (2) competent evidence of incurrence or aggravation of a disease or injury in active service; and (3) competent evidence of a nexus or connection between the current disability and the disease or injury incurred or aggravated in service. Horn v. Shinseki, 25 Vet. App. 231, 236 (2010); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). In many cases, medical evidence is required to meet the requirement that the evidence be "competent". However, when a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature" and is capable of lay observation. Barr v. Nicholson, 21 Vet. App. 303, 309 (2007).

Service connection for certain chronic diseases may be established on a presumptive basis by showing that the disease manifested itself to a degree of 10 percent or more within one year (three years for active tuberculous disease and Hansen's disease; seven years for multiple sclerosis) from the date of separation from service. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). In such cases, the disease is presumed under the law to have had its onset in service even though there is no evidence of that disease during the period of service. 38 C.F.R. § 3.307(a). The term "chronic disease" refers to those diseases listed under section 1101(3) of the statute and section 3.309(a) of VA regulations. 38 U.S.C.A. § 1101(3); 38 C.F.R. § 3.309(a); Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2013). Sensorineural hearing loss and tinnitus, as organic diseases of the nervous system, are among the "chronic diseases" enumerated under section 3.309(a). See Fountain v. McDonald, -- Vet App. --, No. 13-0540, 2015 WL 510609 (February 9, 2015).

Where a chronic disease under 3.309(a) is "shown as such in service" ("meaning clearly diagnosed beyond legitimate question," Walker, 708 F.3d at 1339), or in the presumptive period so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). In cases where a chronic disease is "shown as such in service", the Veteran is "relieved of the requirement to show a causal relationship between the condition in service and the condition for which service-connected disability compensation is sought." Walker, 708 F.3d at 1336. Instead, service connection may be granted for subsequent manifestations of the same chronic disease without any evidence of link or connection between the chronic disease shown in service and manifestations of the same disease at a later time. In other words, "there is no 'nexus' requirement for compensation for a chronic disease which was shown in service, so long as there is an absence of intercurrent causes to explain post-service manifestations of the chronic disease." Id.

If evidence of a chronic condition is noted during service or during the presumptive period, but the chronic condition is not "shown to be chronic, or where the diagnosis of chronicity may be legitimately questioned," i.e., "when the fact of chronicity in service is not adequately supported," then a showing of continuity of symptomatology after discharge is required to support a claim for disability compensation for the chronic disease. Proven continuity of symptomatology establishes the link, or nexus, between the current disease and serves as the evidentiary tool to confirm the existence of the chronic disease while in service or a presumptive period during which existence in service is presumed." Id. at 1336; 38 C.F.R. § 3.303(b).

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the benefit of the doubt shall be given to the claimant. 38 U.S.C.A. § 5107(b). When a reasonable doubt arises regarding service origin, such doubt will be resolved in the favor of the claimant. Reasonable doubt is doubt which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. 38 C.F.R. § 3.102. The question is whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which event the claim must be denied. See Gilbert, 1 Vet. App. at 54.

III. Tinnitus

The Veteran contends that he has tinnitus that began during his period of active military service. At the November 2013 Board hearing, the Veteran testified under oath that during military service, he was regularly exposed to loud aircraft engine noise for long periods of time. He also testified that when he returned from service in Vietnam, he had continued loud noise exposure for the latter part of his active military service from participating in at least daily memorial firing parties without hearing protection. Finally, he testified that he noticed a ringing/buzzing in his ears while he was flying in the Navy and thought it was normal, and has continued to experience it off and on over the years up to the present.

The Veteran's DD Form 214 documents a military occupational specialty (MOS) of aviation machinist's mate, which is consistent with his assertions regarding excessive noise exposure. See VA Fast Letter 10-35 (Sept. 2, 2010) (providing Duty MOS Noise Exposure Listing and stating that if the duty position is shown to have a "moderate" probability of exposure to hazardous noise, exposure to such noise will be conceded for purposes of establishing the in-service event). The Duty MOS Noise Exposure Listing indicates exposure to hazardous noise as "highly probable" for the MOS of aviation machinist's mate, so such exposure is conceded. 

The Veteran is competent to report such symptoms as ringing or buzzing in his ears, because this requires only personal knowledge as it comes to him through his senses. See Layno v. Brown, 6 Vet. App. 465, 470; Barr v. Nicholson, 21 Vet. App. 303, 309 (2007). Because of the inherently subjective nature of tinnitus, it is readily capable of even lay diagnosis. See Charles v. Principi, 16 Vet. App. 370 (2002). The Board concludes that the Veteran's lay testimony provides an adequate basis on which to grant service connection for tinnitus. While there is no medical evidence of record linking the Veteran's current tinnitus to military service, his statements alone are considered competent evidence of subjectively-experienced tinnitus both during military service and in the present. 

The Board notes that VA examiners in January 2015, June 2014, April 2014, and March 2010 opined that the Veteran's tinnitus was less likely than not caused by or a result of an in-service injury, accident, event, or illness. However, as will be described further below, each of these medical opinions is found inadequate due to non-consideration of relevant evidence, and therefore, the opinions lack probative value and do not rise to the level necessary to rebut a presumption of service connection. 

The Board also acknowledges that the March 2010 VA examination report states that the Veteran reported that his tinnitus began approximately one year ago, and its onset was not related to any specific event. At the November 2013 Board hearing, the Veteran testified that he believes he misunderstood what was being asked by the examiner, and that he did not know what was meant by the word "tinnitus". Additionally, although the Veteran's November 2009 claim form states a claim for service connection for "bilateral tinnitus," this is a typed form with a notation that it was completed/submitted with the help of the Veteran's representative, and therefore, it is not beyond reason to think that the Veteran may have described his subjective symptoms of ringing/buzzing in his ears to his representative, who in turn translated that to "tinnitus". However, the Board determines that it need not determine whether the weight of the evidence demonstrates a continuous symptoms since service, as tinnitus is a disability which may be diagnosed by a lay person, and the Board finds the Veteran's reports of experiencing tinnitus in service and in the present credible. Therefore, the Veteran has a self-provided diagnosis of tinnitus in service, and a subsequent manifestation of the same chronic disease during the appeal period so as to allow for service connection on a presumptive basis.

Accordingly, resolving the benefit of the doubt in favor of the Veteran, service connection for bilateral tinnitus is warranted on a presumptive basis as a chronic disease which manifested to a compensable degree during or within one year following service. See 38 U.S.C.A. §§ 1112, 5107(b); 38 C.F.R. §§ 3.307, 3.309. 



ORDER

Service connection for bilateral tinnitus is granted.


REMAND

Reasons for remand: To provide the Veteran with an adequate VA medical opinion and ensure compliance with prior Board remand directives.

In November 2014, the Board remanded the case to provide the Veteran with an additional VA examination and medical opinion with regard to the etiology of his current hearing loss disability. In accordance with the Board's remand directives, the Veteran was provided with an additional VA examination in January 2015. The VA examiner conducted appropriate testing which demonstrated that the Veteran had hearing loss in each ear at thresholds which meet the definition of a hearing loss "disability" for VA service connection purposes. See 38 C.F.R. § 3.385. The examiner also provided an opinion, as requested by the remand, as to whether the Veteran's current hearing loss was at least as likely as not caused by the his in-service noise exposure. She reasoned that the June 1968 enlistment audiogram, September 1968, audiogram, and March 1972 separation audiogram demonstrated normal hearing bilaterally, and that the Veteran's current hearing loss is not due to or aggravated by military noise exposure because "hearing was normal at separation" and because once military noise exposure is removed, hearing would not be expected to get worse.

In the November 2014 remand directives, the Board instructed that the examiner must provide an opinion as to whether the Veteran's current sensorineural hearing loss disability is at least as likely the result of noise exposure in service as it is the result of some other cause or factor, and further, provide an opinion as to what other cause or factor he or she believes is more likely the cause of the current sensorineural hearing loss if the first inquiry should be answered in the negative. The Board requested complete rationales for any opinion, and specified that any rationale that relied solely on in-service tests would be found insufficient. Unfortunately, the January 2015 examination report includes an opinion that on its face is solely based on in-service tests. Additionally, although the examiner stated an opinion that the Veteran's current hearing loss was not as likely as not caused by his in-service noise exposure, she provided no opinion addressing the second part of that inquiry (i.e. what other cause or factor she believed to more likely be the cause of the current hearing loss). 

Compliance with remand directives is not optional or discretionary and the Board errs as a matter of law when it fails to ensure remand compliance. Stegall v. West, 11 Vet. App. 268 (1998). On remand, the Veteran should be provided with a supplemental medical opinion regarding the etiology of his bilateral hearing loss, which includes responses to the specific questions presented.

Additionally, while the January 2015 VA examiner stated that there was not a permanent positive threshold shift greater than normal measurement variability at any frequency between 500 and 6000 Hertz for either ear, the Board notes that in-service audiograms seem to document a downward shift in hearing acuity at certain pure tone levels for the left ear. For example, at the 4000 Hertz level, pure tone thresholds are as follows at the time of various in-service audiograms: 5 decibels at entrance in June 1968; 20 decibels in September 1968; 20 decibels in July 1970; and 15 decibels at separation in March 1972. On remand, the individual providing the supplemental medical opinion should address such findings. 

Accordingly, the case is REMANDED for the following action:

1. Obtain any and all of the Veteran's VA treatment records from December 2014 to the present. All efforts to obtain such records must be fully documented and VA facilities must provide a negative response if no records are found.

2. Refer the Veteran's claims file to a suitably qualified VA medical professional ("reviewer") for a supplemental medical opinion regarding the etiology of the Veteran's current bilateral hearing loss disability. The reviewer must be given full access to the Veteran's complete VA claims file and the Veteran's electronic records for review. The reviewer must specifically note on the report whether the Veteran's VA claims file, to include a copy of this remand, and any electronic records, were reviewed in connection with this examination. 

If, after review of the file, the reviewer determines that another VA examination is necessary, such must be scheduled and the Veteran must be notified.

Based on a review of both the lay and medical evidence of record, the reviewer should provide an opinion as to the following:

i. Whether the Veteran's current bilateral sensorineural hearing loss is, at least in part, as likely as not (50 percent or greater probability) the result of noise exposure in service as it is the result of some other cause or factor.

The reviewer is advised that the Veteran has described excessive noise exposure from aircraft engines during service, consistent with his documented military occupational specialty, so his in-service excessive noise exposure/injury is conceded.

a. In answering the question above, the examiner should comment on the significance, if any, of shifts demonstrated between in-service audiograms from June 1968 (entrance), September 1968, July 1970, and March 1972. The examiner's attention is particularly directed to changes in the left ear at the 4000 Hertz level. 

b. If any downward shift is found to be insignificant, the examiner should specifically indicate what quantity of a threshold shift (e.g. 5dB, 10db, 15 dB, etc...) is considered significant vs. that which can be due to normal variability. 

ii. If the reviewer determines that the Veteran's current sensorineural hearing loss is more likely the result of some cause or factor other than noise exposure during military service, the reviewer must provide an opinion as to what he or she believes to be the more likely source, and explain the reasoning for such a conclusion.

The term 'at least as likely as not' does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of conclusion as it is to find against it.

The reviewer must include in the report the rationale for any opinion expressed. However, if the reviewer cannot respond to the inquiry without resort to speculation, he or she should so state, and further explain why it is not feasible to provide a medical opinion.

3. Thereafter, review the requested medical opinion to ensure responsiveness to, and compliance with, the directives of this remand and implement corrective procedures as needed. 

4. After completing the aforementioned, and conducting any additional development deemed necessary, readjudicate the issue of entitlement to service connection for bilateral hearing loss in light of all additional evidence received. If the benefits sought on appeal are not granted, the Veteran should be furnished with a supplemental statement of the case and afforded an opportunity to respond before the file is returned to the Board for further appellate consideration.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
KATHLEEN K. GALLAGHER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs