Citation Nr: 1743987 
Decision Date: 09/18/17 Archive Date: 10/10/17

DOCKET NO. 13-18 211 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.

2. Entitlement to service connection for tinnitus.

3. Entitlement to service connection for residuals of shrapnel wound to the right shoulder.

4. Entitlement to service connection for residuals of shrapnel wound to the right buttock.


REPRESENTATION

Appellant represented by: Disabled American Veterans



WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

A. Solomon, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1969 to April 1971

This matter comes before the Board of Veterans' Appeals (Board) on appeal from January 2013 and April 2011 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. 

In November 2016, the Veteran presented testimonial evidence at a Board hearing held via videoconferencing equipment before the undersigned Veterans Law Judge. A transcript of the hearing is of record.

The issue of entitlement to service connection for left ear hearing loss is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran served as a combat medic in the Republic of Vietnam during the Vietnam War.

2. The Veteran's right ear sensorineural hearing loss, considered disabling under VA standards, is causally related to excessive noise exposure during active military service.

3. The Veteran's tinnitus arose within one year of active military service, and the Veteran has experienced it on a recurrent basis since that time.

4. The Veteran currently has residuals of an in-service shrapnel wound to the right shoulder, including retained shrapnel and scar.

5. The Veteran currently has residuals of an in-service shrapnel wound to the right buttock, including retained shrapnel and scar.


CONCLUSIONS OF LAW

1. Affording the Veteran the benefit of the doubt, the criteria for service connection for right ear hearing loss have been met. 38 U.S.C.A. §§ 1110, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.385 (2017).

2. The criteria for service connection for bilateral tinnitus have been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2017).

3. The criteria for service connection for residuals of shrapnel wound, right shoulder, with retained shrapnel and scar, have been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304 (2017).

4. The criteria for service connection for residuals of shrapnel wound, right buttock, have been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304 (2017).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Service connection may be established for disability resulting from personal injury suffered or disease contracted in the line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. §§ 3.303, 3.304 (2017). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

To establish service connection for a disability resulting from a disease or injury incurred in service, or to establish service connection based on aggravation in service of a disease or injury which pre-existed service, there must be (1) competent evidence of the current existence of the disability for which service connection is being claimed; (2) competent evidence of incurrence or aggravation of a disease or injury in active service; and (3) competent evidence of a nexus or connection between the current disability and the disease or injury incurred or aggravated in service. Horn v. Shinseki, 25 Vet. App. 231, 236 (2010); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). In many cases, medical evidence is required to meet the requirement that the evidence be "competent". However, when a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature" and is capable of lay observation. Barr v. Nicholson, 21 Vet. App. 303, 309 (2007).

Service connection for certain chronic diseases may be established on a presumptive basis by showing that the disease manifested itself to a degree of 10 percent or more within one year (three years for active tuberculous disease and Hansen's disease; seven years for multiple sclerosis) from the date of separation from service. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). In such cases, the disease is presumed under the law to have had its onset in service even though there is no evidence of that disease during the period of service. 38 C.F.R. § 3.307(a). The term "chronic disease" refers to those diseases listed under section 1101(3) of the statute and section 3.309(a) of VA regulations. 38 U.S.C.A. § 1101(3); 38 C.F.R. § 3.309(a); Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2013). Hearing loss, as an organic disease of the nervous system, is considered to be a chronic disease for these purposes. During the pendency of this appeal, the Court clarified that the list of chronic diseases in 38 C.F.R. § 3.309(a) also "includes tinnitus, at a minimum where there is evidence of acoustic trauma, as an 'organic disease[] of the nervous system.'" Fountain v. McDonald, 27 Vet. App. 258, 260 (2015).

Where a chronic disease under 3.309(a) is "shown as such in service" ("meaning clearly diagnosed beyond legitimate question," Walker, 708 F.3d at 1339), or in the presumptive period so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). In cases where a chronic disease is "shown as such in service," the Veteran is "relieved of the requirement to show a causal relationship between the condition in service and the condition for which service-connected disability compensation is sought." Walker, 708 F.3d at 1336. Instead, service connection may be granted for subsequent manifestations of the same chronic disease without any evidence of link or connection between the chronic disease shown in service and manifestations of the same disease at a later time. In other words, "there is no 'nexus' requirement for compensation for a chronic disease which was shown in service, so long as there is an absence of intercurrent causes to explain post-service manifestations of the chronic disease." Id.

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the benefit of the doubt shall be given to the claimant. 38 U.S.C.A. § 5107(b). Reasonable doubt is doubt which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. 38 C.F.R. § 3.102. The question is whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which event the claim must be denied. See Gilbert, 1 Vet. App. at 54.

Right Ear Hearing Loss

The Veteran asserts that he suffers from hearing loss as a result of his excessive noise exposure while serving as a combat medic during the Vietnam War. Specifically, the Veteran described excessive noise from firefights, explosions, and helicopter noise, and has reported that he did not use hearing protection while in the field. He also testified that at one point, he had an M16 discharged very close to his right ear. 

The Veteran's Form DD-214 confirms that the Veteran served as a combat medic, with other service personnel records documenting an assignment as a Medical Corpsman during his period of overseas duty in Vietnam. The Veteran's statements regarding military noise exposure are found to be consistent with his duties in service. See 38 U.S.C.A. § 1154(a) (providing that "where a veteran is seeking service connection for any disability due consideration shall be given to the places, types, and circumstances of such service . . . .");

For the purposes of applying the laws administered by VA, impaired hearing will be construed to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz (Hz) is 40 decibels or greater; or, when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000 or 4000 Hz are 26 decibels or greater; or, when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

The Veteran was provided with a VA audiological examination in March 2011 at which audiometric testing demonstrated decreased hearing acuity of the right ear at a level qualifying as a "disability" for VA service connection purposes. See 38 C.F.R. § 3.385. The examiner diagnosed sensorineural hearing loss, with a pure tone threshold of 45 decibels at 4000 Hz. The criterion for service connection of the presence of a current disability has therefore been met. 

The remaining question is therefore whether the Veteran's current right ear hearing loss is etiologically related to his in-service excessive noise exposure and acoustic trauma. The Veteran's service treatment records include an entrance examination with an audiogram documenting hearing acuity within normal limits bilaterally. The Veteran is thus presumed to have entered service in sound condition in this regard. An April 1971 separation examination report includes supposed auditory findings of "0" for all levels. The Veteran has asserted that he did not undergo a hearing examination at the time of his discharge from service, which is somewhat corroborated by the fact that it is highly unlikely that the Veteran had 0 dB pure tone thresholds for all levels at separation.

The March 2011 VA examiner provided an opinion that the Veteran's hearing loss was less likely as not due to noise exposure in the military, reasoning that both induction and separation audiograms indicated normal hearing bilaterally with no threshold shift. However, as noted above, the Board finds it unlikely that the audiometric findings of 0 dBs at all levels recorded on the separation examination report represent accurate findings of audiometric testing at that time.

The Veteran submitted a private otolaryngologist opinion in December 2016. The physician found that the Veteran had sensorineural hearing loss, with the right ear worse than the left, which was most likely caused by or a result of his combat noise exposures in Vietnam. Additionally, the Veteran's VA treatment records include a VA consult audiology note wherein the audiologist provided an opinion that military noise exposure is more likely as not a contributing factor the Veteran's hearing impairment, as the audiometric results were consistent with noise-induced cochlear pathology. 

Taken along with the Veteran's competent and credible description of excessive noise exposure in service, including an incident where a gun was fired very close to his right ear, as well as current findings demonstrating worse hearing acuity for the right ear as compared to the left ear, the Board finds that a preponderance of the evidence supports a finding of an etiological connection between the Veteran's current right ear hearing loss disability and his in-service noise exposure.

The evidence thus demonstrates that the Veteran has a current right ear hearing loss disability, he was exposed to acoustic trauma during military service, and it is more likely than not that the right ear high frequency sensorineural hearing loss is related to his in-service noise exposure. Thus, the Board concludes that service connection for right ear hearing loss is warranted on a direct basis. 38 U.S.C.A. §§ 1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.385.

Tinnitus

The Veteran is found to have experienced acoustic trauma during his military service. He testified at the November 2016 Board hearing that he first noticed ringing in his ears when he came back from his combat service overseas, and that he has experienced tinnitus on a recurrent basis since 1971.

The Veteran is competent to report such symptoms as ringing in his ears, because this requires only personal knowledge as it comes to him through his senses. See Layno v. Brown, 6 Vet. App. 465, 470; Barr v. Nicholson, 21 Vet. App. 303, 309 (2007). Because of the inherently subjective nature of tinnitus, it is readily capable of even lay diagnosis. See Charles v. Principi, 16 Vet. App. 370 (2002). The Board concludes that the Veteran's lay testimony provides an adequate basis on which to grant service connection for tinnitus on a presumptive basis as a chronic disease first arising within one year of military service with a continuity of symptomatology to the present. See Walker, 708 F.3d at 1336.

Shrapnel Wounds

The Veteran asserts that in late June 1970, short mortar rounds hit his group's night defensive position, killing two and wounding more than 25 others. The Veteran states that after the impact, he helped tend to the wounded and then realized that he had received wounds to the back of his right shoulder and right buttock, and that a nurse stitched him up and bandaged his buttock. 

VA contacted the National Archives to attempt to verify the incident described by the Veteran, but the National Archives responded in July 2012 that material related to the Veteran's battalion between December 1969 and June 1970 was missing.

The record contains numerous lay statements from individuals who served alongside the Veteran in June 1970. As a whole, they report serving with the Veteran when their position was hit by "friendly fire," and that they saw the Veteran administering medical care immediately following the explosion, and later saw the Veteran's right shoulder bandaged and that he told them he'd been hit in the shoulder and the buttock. Another combat medic, K.W., supplied a statement that he was serving alongside the Veteran during this incident, and personally observed and cared for the Veteran, who had suffered shrapnel wound in back on his right shoulder and in the right butt cheek. Another soldier submitted a lay statement describing the incident and casualties from the mortar rounds, and also identified K.W. as a medic present at the June 1970 event. A picture of the Veteran with his right shoulder bandaged, assumedly from this period of military service, was also submitted. 

The Veteran was provided with a VA examination for his wounds in November 2012. The examiner found that the right shoulder was asymptomatic, except for a scar to the posterior aspect of the right shoulder. The examiner also noted a minimal superficial scar on the mid-lateral buttock on the GM muscle, noting that the scar was associated with muscle injury to Group XVII, pelvic girdle muscles: gluteus maximus, medius, and minimis. No imaging studies were performed. A VA medical opinion was provided in January 2013 stating that the Veteran's scars were less likely as not related to his claimed in-service wounds, because there was no evidence of the right shoulder and right buttock wounds in the service records.

An August 2012 private treatment record documents that an x-ray of the right shoulder demonstrated a metallic small foreign body in the soft tissues. In a September 2012 letter, a VA physician stated that he had examined the Veteran and found him to have "a scar due to shrapnel on his right deltoid with a palpable shrapnel fragment and a scar on his right buttocks from previous shrapnel injury." The physician noted viewing x-rays of the right shoulder and pelvis from August 2012, which showed visible shrapnel fragments in the right buttock area and right shoulder, and opined that these were consistent with the shrapnel injury the Veteran reportedly sustained while on active duty.

Considering the above evidence under the law and regulations cited above, the Board finds that the weight of the evidence supports the Veteran's claim. X-rays and medical professionals have identified scars to both the right shoulder and right gluteus region, as well as small metallic foreign bodies. Further, a VA physician has stated that such findings are consistent with the Veteran's described in-service injury, and the Veteran and several of his fellow service members described both the events of June 1970 and the Veteran's resultant injuries, consistently. Although official personnel records or reports documenting the reported explosion and casualties have not been located, the Board finds that the evidence has at least reached the point of equipoise so as to allow for resolution of the doubt in the Veteran's favor. Service connection for residuals of shrapnel wounds to the right shoulder and right buttock is therefore found warranted on a direct basis.


ORDER

Service connection for right ear hearing loss is granted.

Service connection for bilateral tinnitus is granted.

Service connection for residuals of shrapnel wound to the right shoulder, with scar and retained shrapnel, is granted.

Service connection for residuals of shrapnel wound to the right buttock, with scar and retained shrapnel, is granted.



REMAND

Further development is needed prior to adjudication of the remaining issue on appeal.

For the purposes of applying the laws administered by VA, impaired hearing will be construed to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz (Hz) is 40 decibels or greater; or, when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000 or 4000 Hz are 26 decibels or greater; or, when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

The Veteran was last provided with a VA audiometric examination in connection with the claim in March 2011. Pure tone threshold testing and speech recognition testing utilizing the Maryland CNC word list did not demonstrate decreased hearing acuity to a degree as would constitute a hearing loss "disability" for VA service connection purposes. 

At the November 2016 Board hearing, the Veteran testified that his hearing loss had been worsening. The United States Court of Appeals for Veterans Claims (Court) has held that a veteran is entitled to a new VA examination where there is evidence that the disability has worsened since the last VA examination. See Snuffer v. Gober, 10 Vet. App. 400 (1997); Caffrey v. Brown, 6 Vet. App. 377 (1994). The Court has also held that VA's statutory duty to assist a veteran includes the duty to conduct a thorough and contemporaneous examination so that the evaluation of the claimed disability will be a fully informed one. See Green v. Derwinski, 1 Vet. App. 121, 124 (1991). Given the circumstances in this case, on remand, the Veteran should be provided with an additional audio examination to assess the extent of the Veteran's loss of left ear hearing acuity. 

As the Board is remanding this issue for other development, action should be taken to obtain any outstanding VA treatment records and to associate them with the claims file.

Accordingly, the claim is REMANDED for the following action:

1. Obtain any and all relevant outstanding VA treatment records and associate them with the claims file. All efforts to obtain such records must be fully documented and VA facilities must provide a negative response if no records are found.

2. Thereafter, schedule the Veteran for a VA examination with a board-licensed audiologist to evaluate the nature and etiology of his claimed left ear hearing loss. Any and all studies, tests, and evaluations deemed necessary should be performed. All pertinent evidence of record must be made available and reviewed by the examiner in conjunction with conducting the examination. The examiner must specifically note on the VA examination report whether these records, to include a copy of this remand, were reviewed in connection with this examination. 

If the audiometric testing reveals a left ear hearing loss disability for VA compensation purposes, the examiner must provide an opinion as to whether it is at least as likely as not (a 50 percent or greater probability) that the Veteran's current left ear hearing loss arose during service, is otherwise related to his military service, to include in-service noise exposure during combat, or is related to his service-connected right ear hearing loss disability. In providing this opinion, the examiner must consider the Veteran's military occupational specialty; any objective medical findings in the service treatment records; and his competent statements regarding the onset and progression of his left ear hearing symptomatology.

All opinions must be supported by a complete rationale. 

3. Thereafter, review the requested medical report to ensure responsiveness and full compliance with the directives of this remand; implement corrective procedures as needed. 

4. After completing the aforementioned, and any additional development deemed necessary in light of the expanded record, readjudicate the Veteran's claim of entitlement to service connection for left ear hearing loss. If the benefits sought on appeal are not granted in full, the Veteran and his representative should be furnished with a Supplemental Statement of the Case and afforded an opportunity to respond before the file is returned to the Board for further appellate consideration, if in order.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
MICHAEL MARTIN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs