﻿Citation Nr: AXXXXXXXX
Decision Date: 09/26/19 Archive Date: 09/26/19

DOCKET NO. 190215-3013
DATE: September 26, 2019

ORDER

Entitlement to service connection for left knee osteoarthritis, status post total knee replacement (left total knee replacement) is denied.

Entitlement to service connection for cervical discogenic and spondyloarthropatic disease, post-operative (cervical spine disability) is denied.

Entitlement to an evaluation in excess of 20 percent for service-connected lumbar strain (claimed as low back condition, HNP, and herniated disc), is denied.

Entitlement to an effective date prior to February 12, 2018, for the grant of a 20 percent disability rating for service-connected lumbar strain, is denied. 

Entitlement to a total disability based on individual unemployability (TDIU) is denied. 

FINDINGS OF FACT

1. The Veteran’s left knee disability is not attributable to service. 

2. The Veteran’s cervical spine disability is not attributable to service. 

3. The Veteran’s service-connected lumbar strain has not been manifested by forward flexion of the lumbar spine to 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine.

4. VA received an increased rating claim for a low back condition on February 12, 2018. Prior to February 12, 2018, there was no pending back condition increased rating claim that remained unadjudicated; the Veteran did not meet the criteria for the 20 percent disability rating for his lumbar strain prior to February 12, 2018. 

5. The Veteran’s service-connected lumbar strain has not been shown to be of such severity so as to preclude substantially gainful employment.

CONCLUSIONS OF LAW

1. The criteria for service connection for left disability have not been met. 38 U.S.C. §§ 1110, 1113, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2018).

2. The criteria for service connection for cervical spine disability have not been met. 38 U.S.C. §§ 1110, 1113, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2018).

3. The criteria for an evaluation in excess of 20 percent for service-connected lumbar strain have not been met. 38 U.S.C. § §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.7, 4.40, 4.45, 4.59,4.71a, Diagnostic Code 5237 (2018).

4. The criteria for an effective date prior to February 12, 2018, for the grant of the 20 percent evaluation for service-connected lumbar strain have not been met. 38 U.S.C. § §§ 5107, 5110 (2012); 38 C.F.R. §§ 3.102, 3.156, 3.159, 3.400, Diagnostic Code 5237(2018).

5. The criteria for TDIU have not been met. 38 U.S.C. § §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.340, 3.341, 4.15, 4.16 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from December 1973 to July 1975. 

The Board notes that the rating decision on appeal was issued in November 2018. In September 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § § 19.2(d)).

The Veteran selected the Higher-Level Review lane when he opted in to the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form. Accordingly, the November 2018 AMA rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

The Board will take jurisdiction of entitlement to a TDIU per Rice, as part and parcel of the claim for increased rating for the Veteran’s service-connected lumbar strain. Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009).

Service Connection 

A Veteran is entitled to VA disability compensation if there is a disability resulting from personal injury suffered or disease contracted in the line of duty in active service, or for aggravation of a preexisting injury suffered or disease contracted in the line of duty in active service. 38 U.S.C. § §§ 1110, 1131.

Generally, to establish a right to compensation for a present disability, a veteran must show: (1) a present disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service, the so-called “nexus” requirement. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection may be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that a disease was incurred in service. 38 C.F.R. § § 3.303(d). 

1. Left knee

The first and second Shedden elements are met and not in dispute. The Veteran has diagnosed left knee osteoarthritis, status post total knee replacement. Significantly, in a November 2018 rating decision, the AOJ made the favorable findings that private medical records note left knee osteoarthritis in 2015 and service treatment records show the Veteran suffered a left knee injury in October 1974 and April 1975. See November 2018 rating decision (favorable findings).

As such, the crux of this case centers on whether there is an etiological relationship between the Veteran’s left knee osteoarthritis, status post total knee replacement and service. In this regard, the Board acknowledges that in an August 2017 private nexus opinion. Dr. C.Q. opined that the Veteran’s musculoskeletal condition is more probably than not secondary to his military service. However, Dr. C.Q. did not provide a rationale or sufficient explanation to support his conclusion that his left knee condition is related to service. As such, it is nonprobative. An unexplained conclusory opinion is entitled to no weight in a service-connection context. Horn v. Shinseki, 25 Vet. App. 231, 240 (2012).

In contrast, the April 2017 VA examiner opined that the Veteran’s left knee condition was less likely than not incurred in or caused by the in-service injury, event or illness. The examiner explained that there is evidence in service treatment records that the Veteran complained of left knee pain November 1974, but since then, military and all medical records are silent for the condition for at least five years after being released from active duty service. The examiner stated that this means that the left knee pain reported in 1974 was transitory and acute, which improved with proper treatment given. The examiner further opined that the Veteran’s osteoarthritis is less likely than not caused by or result from military service. The examiner explained that there is no evidence of continuity of treatment for the condition within at least five years after being released from active duty service. The examiner stated that the Veteran’s knee condition is more likely than not the result of age, obesity, and his occupational history, all of which predispose to him to develop degenerative joint disease. The examiner stated that there is significant evidence on medical literature that support the fact that the Veteran’s knee condition can be considered part of the normal aging process in patients older than 40 years old. 

The May 2018 VA examiner opined that the Veteran’s left knee condition was less likely than not incurred in or caused by an in-service injury, event, or illness. The examiner explained that there is evidence in the Veteran’s service treatment records that he complained of left knee pain during active military service. However, there is no evidence of continuity or treatment within 10 years after his active duty service discharge. The examiner determined that the condition was acute and transient that resolved with treatment at the time. The examiner further stated that as per the Veteran’s own statements, he underwent left knee arthroscopy in 1999, then in 2000 (over twenty years after his active duty discharge, then in 2015 underwent total knee replacement. The examiner concluded that the Veteran’s present left knee condition is not related to active duty service. 

The Board finds the examiners competent and credible and finds the examination reports and conclusions highly probative as the examiner reviewed the claims file, examined the Veteran, and probative sufficient rationales to support the examination reports and conclusions. 

In assessing the service connection claim, the Board has considered the lay assertions of record. Lay persons are competent to offer testimony regarding observable symptomatology and the Veteran is competent to report left knee pain in service and after service. However, while lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, the etiology of the left knee condition, to include whether it is related to service, falls outside the realm of common knowledge of a lay person. In this regard, while the Veteran can competently report his left knee pain, any opinion regarding whether his left knee condition is related to military service requires medical expertise that the Veteran has not demonstrated. See Jandreau v. Nicholson, 492 F. 3d 1372, 1376 (2007). Thus, the Board finds that the question of whether the Veteran’s left knee disability is related to his active military service is too complex to be addressed by a layperson as such connection or etiology is not amenable to observation alone. Hence, the Veteran’s opinion of the etiology of his current left knee disability is not competent evidence and is entitled to low probative weight. While the Board has considered the Veteran’s subjective complaints, it gives greater weight to the objective medical evidence and the opinions in the April 2017 and May 2018 VA examination reports. 

Therefore, the preponderance of the evidence is against the claim for service connection for left knee disability; thus, the benefit of the doubt rule does not apply. Accordingly, service connection for left knee disability must be denied. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. at 54-56.

2. Cervical spine

The first and second Shedden elements are met and not in dispute. The Veteran has diagnosed cervical discogenic and spondyloarthropatic disease, status post cervical surgery. See May 2018 VA examination report. Significantly, in a November 2018 rating decision, the AOJ made the favorable findings that the medical records note cervical discogenic disease in 2015 and that service treatment records show the Veteran suffered a neck sprain in February 1974. See November 2018 rating decision (favorable findings). 

As such, the crux of this case centers on whether there is an etiological relationship between the Veteran’s cervical discogenic and spondyloarthropatic disease, status post cervical surgery and service. In this regard, the Board acknowledges that in an August 2017 private nexus opinion. Dr. C.Q. opined that the Veteran’s musculoskeletal condition is more probably than not secondary to his military service. However, Dr. C.Q. did not provide a rationale or sufficient explanation to support his conclusion that his cervical spine condition is related to service. As such, it is nonprobative. An unexplained conclusory opinion is entitled to no weight in a service-connection context. Horn v. Shinseki, 25 Vet. App. 231, 240 (2012).

In contrast, the May 2018 VA examiner opined that the Veteran’s cervical spine condition was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The examiner explained that as per the Veteran’s lay statement, he injured his neck during basic training ans was evaluated and treated at the time. The examiner stated that the condition was acute and transient that resolved with treatment given at the time. There are no further complaints, evaluations, and/or treatment for the now claimed neck condition during the rest of his active duty military service, or within five years after his active duty military discharge. The examiner concluded that the present condition is not related to the Veteran’s active duty service.

The Board finds the May 2018 VA examiner competent and credible and finds the examination report and conclusions highly probative as the examiner reviewed the claims file, examined the Veteran, and provided sufficient rationales to support the conclusions. 

In assessing the service connection claim, the Board has considered the lay assertions of record. Lay persons are competent to offer testimony regarding observable symptomatology and the Veteran is competent to report neck pain in service and after service. However, while lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, the etiology of the cervical spine condition, to include whether it is related to service, falls outside the realm of common knowledge of a lay person. In this regard, while the Veteran can competently report his neck pain, any opinion regarding whether his cervical spine condition is related to military service requires medical expertise that the Veteran has not demonstrated. See Jandreau v. Nicholson, 492 F. 3d 1372, 1376 (2007). Thus, the Board finds that the question of whether the Veteran’s cervical spine disability is related to his active military service is too complex to be addressed by a layperson as such connection or etiology is not amenable to observation alone. Hence, the Veteran’s opinion of the etiology of his current cervical spine disability is not competent evidence and is entitled to low probative weight. While the Board has considered the Veteran’s subjective complaints, it gives greater weight to the objective medical evidence and the opinion of the May 2018 VA examiner. 

Therefore, the preponderance of the evidence is against the claim for service connection for cervical spine disability; thus, the benefit of the doubt rule does not apply. Accordingly, service connection for cervical spine disability must be denied. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. at 54-56.

Earlier Effective Date

The statutory guidelines for the determination of an effective date of an award are set forth in 38 U.S.C. § § 5110. Except as otherwise provided, the effective date of an evaluation and award of compensation based on an original claim, a claim reopened after a final disallowance, or a claim for increase will be the date of receipt of the claim, or the date entitlement arose, whichever is the latter. 38 C.F.R. § § 3.400.

A rating decision becomes final and binding if the veteran does not timely perfect an appeal of the decision, or unless new and material evidence is received prior to the expiration of the appeal period. 38 U.S.C. § § 7105; 38 C.F.R. § §§ 3.104(a), 3.160(d), 3.156, 20.200, 20.302, 20.1103. 

Previous determinations that are final and binding will be accepted as correct in the absence of clear and unmistakable error (CUE). 38 C.F.R. § §§ 3.105(a), 20.1400. In order for a veteran to be awarded an effective date based on an earlier claim, he has to show CUE in the prior denial of the claim, as a collateral attack. Flash v. Brown, 8 Vet. App. 332, 340 (1995).

If an increase in disability occurred within one year prior to the claim, the increase is effective as of the date the increase was “factually ascertainable.” If the increase occurred more than one year prior to the claim, the increase is effective the date of claim. If the increase occurred after the date of claim, the effective date is the date of increase. 38 U.S.C. § § 5110(b)(2); Harper v. Brown, 10 Vet. App. 125 (1997); 38 C.F.R. § 3.400(o); VAOPGCPREC 12-98 (1998). In making this determination, the Board must consider all of the evidence, including that received prior to previous final decisions. Hazan v. Gober, 10 Vet. App. 511 (1997).

A specific claim in the form prescribed by the Secretary of VA must be filed in order for benefits to be paid to any individual under the laws administered by VA. 38 U.S.C. § § 5101(a). In pertinent part, prior to March 24, 2015, any communication or action indicating an intent to apply for one or more VA benefits could be considered an informal claim. Under 38 C.F.R. § § 3.155(a), the veteran or a representative of the veteran could file an informal claim by communicating an intent to apply for one or more VA benefits. Upon receipt of an informal claim, if a formal claim had not been filed, an application form would be forwarded to the claimant for execution. If received within one year from the date it was sent to the claimant, it would be considered filed as of the date of receipt of the informal claim. 

An “application” is used synonymously with “claim” and defined as a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § § 3.1(p); see also Rodriguez v. West, 189 F.3d. 1351 (Fed. Cir. 1999), cert. denied, 529 U.S. 1004 (2000).

Although a claimant need not identify the benefit sought “with specificity,” see Servello v. Derwinski, 3 Vet. App. 196, 199-200 (1992), some intent on the part of the veteran to seek benefits must be demonstrated. See Brannon v. West, 12 Vet. App. 32, 34-35 (1998). The United States Court of Appeals for the Federal Circuit (Federal Circuit) has emphasized that VA has a duty to fully and sympathetically develop a veteran’s claim to its optimum. Hodge v. West, 155 F.3d 1356, 1362 (Fed. Cir. 1998). This duty requires VA to “determine all potential claims raised by the evidence, applying all relevant laws and regulations,” Roberson v. West, 251 F.3d 1378, 1384 (Fed. Cir. 2001), and extends to giving a sympathetic reading to all pro se pleadings of record. Szemraj v. Principi, 357 F.3d 1370, 1373 (Fed. Cir. 2004).

3. EED lumbar strain 

The AOJ granted service connection for a low back strain in a May 2017 rating decision; the Veteran did not appeal the decision. The May 2017 decision became final. 

Following the final May 2017 rating decision, the first communication from the Veteran seeking an increased disability rating for low back disability was in February 2018. On February 12, 2018, VA received the Veteran’s claim for increased rating for low back condition. See February 2018 VA Form 21-526EZ. In an April 2018 rating decision, the AOJ granted an increased rating for low back condition from 10 percent, to 20 percent disabling, effective December 2018. In a June 2018 rating decision, the AOJ granted entitlement to an earlier effective date for service-connected lumbar strain and assigned a 20 percent evaluation, effective February 12, 2018. 

The Veteran contends he is entitled to an earlier effective for the grant of the 20 percent disability rating. 

First, the Board finds that entitlement to an effective date of June 1, 2011, for the grant of the 20 percent disability rating for low back disability cannot be established. As discussed above, the May 2017 rating decision became final. To date, CUE has not been asserted by the Veteran, and is not presently before the Board on appeal. Accordingly, the Board finds an effective date for the grant of a 20 percent disability rating for low back disability cannot be established prior to the final May 2017 rating decision. See 38 C.F.R. § 3.400.

Next, the Board finds the Veteran did not file a claim, either formal or informal, for an increased disability rating prior to the February12, 2018, claim. Following the unappealed May 2017 rating decision, the evidence of record does not support that either the Veteran indicated an intent to apply for an increased disability rating, or indicating the Veteran’s cervical spine disability had worsened, prior to the communication received on February 12, 2018. Further, the Board finds that an informal claim was not received in accordance with 38 C.F.R. § 3.157. 

Therefore, the question before the Board is when it is shown from the evidence of record that the Veteran met the criteria for the 20 percent disability rating for his low back disability. See 38 C.F.R. § 3.400(o)(1). The Board is to determine the “earliest date as of which,” within the year prior to the claim, the increase in disability was ascertainable. See Servello, 3 Vet. App. 196; 38 U.S.C. § § 5110(b)(2); 38 C.F.R. §§ 3.155, 3.400(o)(2).

The Veteran’s lumbar strain is rated under Diagnostic Codes 5237. Under the General Rating Formula for Disease and Injuries of the Spine (Diagnostic Codes 5235-5242), a 20 percent rating is warranted for forward flexion of the lumbar spine greater than 30 degrees but less than 60 degrees, or combined range of motion of the lumbar spine not greater than 120 degrees, or muscle spasm, guarding or localized tenderness resulting in abnormal gait or abnormal spinal contour; a 40 percent rating is warranted for forward flexion of the lumbar spine to 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine; a 50 percent rating is warranted for unfavorable ankylosis of the entire thoracolumbar spine; and a 100 percent, the maximum available, is warranted for unfavorable ankylosis of the entire spine. See 38 C.F.R. § 4.71a. These ratings are made with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease. Id. 

The Board has reviewed the evidence of record for the period between May 2017 and February 2018, and the Board finds that the evidence does not support that it is factually ascertainable that prior to the Veteran’s February 12, 2018, claim, that his low back disability increased in severity to meet the criteria for a 20 percent disability rating. The medical evidence in the file pertaining to the low back disability, for the relevant period is sparse, but the Board acknowledges the medical evidence of record noting the Veteran’s low back symptoms, including low back pain, weakness, and instability. See August 2017 Dr. C.Q. opinion. However, the Board finds that the objective evidence of record does not support that the Veteran’s symptoms more nearly approximated the criteria for a 20 percent disability rating prior to February 12, 2018. In this regard, prior to February 2018, the evidence does not support that the Veteran’s lumbar strain resulted in forward flexion greater than 30 degrees but less than 60 degrees, or combined range of motion of the lumbar spine not greater than 120 degrees, or muscle spasm, guarding or localized tenderness resulting in abnormal gait or abnormal spinal contour. Instead, the first evidence of record to support a 20 percent disability rating for his lumbar spine is the March 2018 VA examination report which revealed range of motion limited to forward flexion of 40 degrees. 

Accordingly, the Board concludes that the Veteran is not entitled to an effective date prior to February 12, 2018, his date of claim for increased rating, for the grant of the 20 percent disability rating for lumbar strain. 38 C.F.R. § 3.400(o). Therefore, the Board finds that an effective date prior to February 12, 2018, for the grant of the 20 percent rating for low back disability is not warranted and the claim is denied. See 38 U.S.C. § § 5107(b); 38 C.F.R. §§ 3.102, 4.3. 

Increased Rating 

Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § § 1155; 38 C.F.R. § 4.1. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

“Staged” ratings are appropriate for any rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App. 119 (1999).

4. Increased rating for lumbar strain 

The Veteran’s service-connected lumbar strain is currently rated 10 percent disabling, effective July 8, 2016, and 20 percent disabling, effective February 12, 2018. On February 12, 2018, VA received the Veteran’s claim for increased rating for low back condition. See February 2018 VA Form 21-526EZ. 

The Veteran’s lumbar spine disability is current rated under Diagnostic Code 5237. 

Under the General Rating Formula for Disease and Injuries of the Spine (Diagnostic Codes 5235-5242), a 20 percent rating is warranted for forward flexion of the lumbar spine greater than 30 degrees but less than 60 degrees, or combined range of motion of the lumbar spine not greater than 120 degrees, or muscle spasm, guarding or localized tenderness resulting in abnormal gait or abnormal spinal contour; a 40 percent rating is warranted for forward flexion of the lumbar spine to 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine; a 50 percent rating is warranted for unfavorable ankylosis of the entire thoracolumbar spine; and a 100 percent, the maximum available, is warranted for unfavorable ankylosis of the entire spine. See 38 C.F.R. § 4.71a. These ratings are made with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease. Id. 

Associated objective neurologic abnormalities are to be rated separately. The combined range of motion refers to the sum of forward flexion, extension, left and right lateral flexion, and left and right rotation. For VA compensation purposes, normal forward flexion of the lumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion is zero to 30 degrees, and left and right lateral rotation is zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. See 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5242, Note (2).

In rating disabilities of the musculoskeletal system, additional rating factors include functional loss due to pain supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. 38 C.F.R. § 4.40 (2018). The intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59 (2018). When assigning a disability rating, it is necessary to consider functional loss due to flare-ups, fatigability, incoordination, and pain on motion. DeLuca v. Brown, 8 Vet. App. 202 (1995).

The Veteran was afforded VA back examinations in April 2017 and May 2018 with his most reduced range of motion demonstrated upon May 2018 VA examination. Upon April 2017 VA back examination, the Veteran reported flare-ups described as difficulty walking and bending. Range of motion testing revealed forward flexion from zero degrees to 70 degrees; extension from zero degrees to 20 degrees; left lateral flexion from zero degrees to 20 degrees; right lateral flexion from zero degrees to 20 degrees; left lateral rotation from zero degrees to 20 degrees; and right lateral rotation from zero degrees to 20 degrees. Pain was noted on examination that did not result in functional loss. The Veteran was able to perform repetitive use testing with at least three repetitions with additional function loss or loss of range of motion. The Veteran did not have guarding or muscle spasm of the thoracolumbar spine; did not have radicular pain or any other signs or symptoms due to radiculopathy; did not have ankylosis; did not have invertebral disc syndrome (IVDS); and did not have any other neurologic abnormalities or findings related to a thoracolumbar spine (back) condition (such as bowel or bladder problems/pathologic reflexes. 

Upon March 2018 VA back examination, the Veteran reported flare-ups described as loss of ambulation and standing tolerance. Range of motion testing revealed forward flexion from zero degrees to 40 degrees; extension from zero degrees to 15 degrees; left lateral flexion from zero degrees to 20 degrees; right lateral flexion from zero degrees to 15 degrees; left lateral rotation from zero degrees to 15 degrees; and right lateral rotation from zero degrees to 15 degrees. The Veteran was able to perform repetitive use testing with at least three repetitions with additional function loss or loss of range of motion. The Veteran had guarding and muscle spasm of the thoracolumbar spine that did not result in abnormal gait or abnormal spinal contour. He did not have radicular pain or any other signs or symptoms due to radiculopathy; did not have ankylosis; did not have invertebral disc syndrome (IVDS); and did not have any other neurologic abnormalities or findings related to a thoracolumbar spine (back) condition (such as bowel or bladder 

After a review of the evidence, the Board finds that the Veteran’s low back disability does not more nearly approximate the criteria for a rating in excess of 20 percent at any time during the appeal period. The evidence of record has not demonstrated that the Veteran’s low back disability has been limited to forward flexion of the lumbar spine to 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine. As noted above, at his worst, the Veteran’s forward flexion was limited to 40 degrees. See May 2018 VA examination report. Although he was noted as having guarding and muscle spasm of the thoracolumbar spine; it did not result in abnormal gait or abnormal spinal contour and his additional current symptomatology includes pain, painful motion, and pain with walking, bending and prolonged ambulation and standing, such symptomatology is contemplated in the currently assigned 20 percent disability rating. As a result, a rating in excess of 20 percent is denied for service-connected lumbar spine disability. See 38 C.F.R. § 4.71a, Diagnostic Code 5237.

Next, when evaluating musculoskeletal disabilities, VA may, in addition to applying schedular criteria, consider granting a higher rating in cases in which the claimant experiences additional functional loss due to pain, weakness, excess fatigability, or incoordination, to include with repeated use or during flare-ups, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202, 204-07 (1995). The provisions of 38 C.F.R. §§ 4.40 and 4.45 are to be considered in conjunction with the Diagnostic Codes predicated on limitation of motion. See Johnson v. Brown, 9 Vet. App. 7 (1996).

In this case, the Board finds the Veteran’s disability picture from his service-connected spine disability is not more closely approximated by a higher rating based on the presence of additional functional loss based on the criteria set forth in 38 C.F.R. §§ 4.40 4.45, and the holdings in DeLuca, 8 Vet. App. at 206. 

After a review of the evidence discussed above, the Board finds that the functional equivalent of ankylosis, is not shown at any time during the initial appeal period. Such findings are not shown, even when considering the Veteran’s reported symptomatology for the service-connected spine disability. The Veteran’s reported symptomatology do not, when viewed in conjunction with the medical evidence, tend to establish additional limitations of motion to the degree that would warrant a rating of 40 percent for the service-connected spine disability at any time during the initial appeal period under 38 C.F.R. §§ 4.40, 4.45, and the holdings in DeLuca. 

Lastly, the Board considers whether a separate evaluation may be warranted for any associated objective neurological abnormalities, including, but not limited to, bowel or bladder impairment, under an appropriate Diagnostic Code. See 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243, Note (1). 

Upon April 2017 and May 2018 VA examinations, the Veteran did not have radicular pain or any other signs or symptoms due to radiculopathy and did not have any other signs of radiculopathy. Further, he did not have any other neurologic abnormalities or findings related to a thoracolumbar spine (back) condition (such as bowel or bladder problems/pathologic reflexes). 

After a review of the evidence discussed above, the Board finds a separate evaluation for any associated objective neurological abnormality associated with the service-connected spine disability is not warranted in this case.

Consideration has been given to assigning staged ratings. However, at no time has the disability warranted higher schedular ratings than the assigned. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). The Board finds that the Veteran’s spine disability has not significantly changed and a uniform rating is warranted.

Accordingly, the Board finds that a rating in excess of 20 percent, for lumbar spine disability, is not warranted. 38 U.S.C. § § 5107(b); Gilbert v, Derwinski, 1 Vet. App. 49, 53-56 (1990).

5. TDIU

The Veteran filed a March 2018 claim for TDIU wherein he asserted that his back and legs prevent him from securing or following any substantially gainful occupation. 

The Veteran has completed four years of college. He reported that he was last employed full-time in December 2011. His work history included working at the F.B.I. doing translations from 1988 to December 2011. 

Total disability will be considered to exist where there is present any impairment of mind and body that is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340. Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that the Veteran meets the schedular requirements. 

Specifically, if there is only one such disability, this disability shall be ratable at 60 percent or more; if there are two or more disabilities, there shall be at least one disability that is ratable at 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). For the stated purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable; and (2) disabilities resulting from common etiology or a single accident. 38 C.F.R. § 4.16 (a).

“Substantially gainful employment” is that employment “which is ordinarily followed by the nondisabled to earn their livelihood with earnings common to the particular occupation in the community where the veteran resides.” Moore v. Derwinski, 1 Vet. App. 356, 358 (1991). “Marginal employment shall not be considered substantially gainful employment.” 38 C.F.R. § 4.16(a) (2018).

In determining whether unemployability exists, consideration may be given to the Veteran’s level of education, special training, and previous work experience, but not to his age or to any impairment caused by nonservice-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19.

The Veteran is in receipt of a 10 percent rating, effective July 8, 2016, and 20 percent rating, effective February 12, 2018, for his single service-connected lumbar strain disability. Thus, the Veteran has not met the schedular criteria for the entire period on appeal. 

Where the scheduler criteria are not met, an extra-schedular rating is for consideration. 38 C.F.R. § 3.321. Entitlement to benefits on an extra-schedular basis may be considered when the Veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities. 38 C.F.R. § 4.16(b). Thus, the central question that remains for the entire period on appeal is “whether the Veteran’s service-connected disabilities alone are of sufficient severity to produce unemployability.” Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). A Veteran need not show 100 percent unemployability in order to be entitled to a TDIU. Roberson v. Principi, 251 F.3d 1378, 1385 (Fed. Cir. 2001).

In determining whether unemployability exists, consideration may be given to the Veteran’s level of education, special training, and previous work experience, but it may not be given to her age or to any impairment caused by nonservice-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19.

In this case, despite the Veteran’s reports that he is unable to work due to his service-connected disability, the Board finds that the Veteran has the training and skills necessary to perform work. 

The Veteran has completed four years of college. While serving in the military, the Veteran’s military occupational specialty (MOS) was the civilian equivalent of a loader, operator. See Form DD -214. He reported that he was last employed full-time in December 2011. His post-service work history included working at the F.B.I. doing translation from 1988 to December 2011. He reported earning $7,000 per month and working 40 hours per week. See VA Form 21-8940. 

The Board acknowledges Dr. C.Q.’s August 2017 opinion that the Veteran is 100 percent disabled and his conditions affect his ability to work; however, Dr. C.Q. diagnosed the Veteran with multiple musculoskeletal disabilities and other diagnoses that he is not service-connected; however, only service-connected disabilities are considered for the assignment of TDIU. In contrast, the March 2018 VA examiner indicated that the Veteran’s thoracolumbar spine (back) condition did not have a functional impact on his ability to work. 

The record shows that after a career at the FBI of over 20 years, the Veteran is no longer employed. However, the Board finds that despite experiencing some back symptoms, the Veteran is not precluded from employment as a result of his service-connected lumbar spine disability. Significantly, the Veteran has forward flexion from zero degrees to 40 degrees; extension from zero degrees to 15 degrees; left lateral flexion from zero degrees to 20 degrees; right lateral flexion from zero degrees to 15 degrees; left lateral rotation from zero degrees to 15 degrees; and right lateral rotation from zero degrees to 15 degrees. The Veteran was able to perform repetitive use testing with at least three repetitions with additional function loss or loss of range of motion. He did not have radicular pain or any other signs or symptoms due to radiculopathy; did not have ankylosis; did not have invertebral disc syndrome (IVDS); and did not have any other neurologic abnormalities or findings related to a thoracolumbar spine (back) condition (such as bowel or bladder. Further, the March 2018 VA examiner indicated that the Veteran’s thoracolumbar spine (back) condition did not have a functional impact on his ability to work. 

Moreover, the Board finds that the Veteran’s current unemployment is not the result of his service-connected lumbar spine disability. The term unemployability is not synonymous with the terms unemployed and unemployable for the purposes of determining entitlement to TDIU. A Veteran may be unemployed or unemployable for a variety of reasons, but a determination as to entitlement to TDIU is appropriate only when a Veteran’s unemployability is the result of a service-connected disability. Significantly, while the Veteran has reported that he became too disabled to work as of December 2011 due to his back and legs, the Board notes that the Veteran is not service-connected for a leg disability. 

In light of the above, the Board finds that the preponderance of the evidence indicates that the Veteran would be able to obtain and maintain substantial gainful employment and is not precluded from working due to his service-connected lumbar spine disability. Accordingly, after reviewing the evidence of record, the Board finds that a TDIU is not warranted and referral to the Director of Compensation Service for any period on appeal is also not warranted because the preponderance of the evidence is against a finding that the Veteran is unable to maintain substantial gainful employment.

 

 

C. TRUEBA

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board S. Schick, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § § 20.1303.